IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESSE [OR JESSIE][1] YORK          *

                Plaintiff          *

            vs.          *   CIVIL ACTION NO. MJG-16-227

ALLEGANY COUNTY          *
DEPARTMENT OF SOCIAL SERVICES,
ET AL.          *

           Defendants          *

*          *          *          *          *          *          *          *          *

MEMORANDUM AND ORDER RE: DISMISSAL

The Court has before it Defendants' Motion to Dismiss [ECF No. 8] and the materials submitted relating thereto.  The Court finds a hearing unnecessary.


I.   BACKGROUND

Plaintiff Jesse York ("York") and his former wife ("Krista") are the parents of KY and EY ("the Children").

Defendant Allegany County Department of Social Services Child Protective Services ("Protective Services") provides protective services for children who are believed to be neglected or abused. Defendants Christopher Offutt, Richard Paulman, Pamela Rice, and John Sangiovanni (collectively, "the Employees") are employees of Protective Services.

---

[1]   Plaintiff's pleadings use both "Jesse" and "Jessie" as his first name.  The Court herein refers to him as Jesse.

The Complaint [ECF No. 1][2] presents claims[3] in two Counts:

>       FIRST CLAIM FOR RELIEF - 42 U.S.C.
> § 1983 - in violation of the Fourteenth
> Amendments (<u>sic</u>) (Against Defendant Allegany
> County Department of Social Services, Child
> Protective Services)

>       SECOND CLAIM FOR RELIEF - Violation of
> 42 U.S.C. § 1983 - Deliberately Indifferent
> Policies, Practices, Customs, Training, and
> Supervision in violation of the Fourth,
> Fourteenth, and First Amendments and in
> violation of 42 U.S.C. § 1981
> (Against Defendant Allegany County
> Department of Social Services, Child
> Protective Services)

[ECF No. 1 at 8, 10].

By the instant motion, Defendants seek dismissal of all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

II.   <u>DISMISSAL STANDARD</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[4] tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of

---

[2]     All ¶ references herein refer to paragraphs of the Complaint [ECF No. 1].

[3]     The Complaint expressly asserts claims against Protective Services based upon alleged actions or inactions of the Employees.  The Complaint does not expressly assert any claims against the Employees themselves.  However, if it were considered to do so, the claims would be dismissed on the rationale on which the claims against Protective Services are dismissed.

[4]     All "Rule" references herein are to the Federal Rules of Civil Procedure.

the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a Plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to Plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III.     <u>DISCUSSION</u>

A. <u>Complaint Allegations</u>[5]

On an unspecified date, York and Krista were married.  The
couple had two sons, EY born in 1998 and KY[6] born in 2006.  On a
date not specified, York and Krista were divorced.  In 2010,
Krista married a man who became the Children's stepfather ("the
Stepfather").

On August 3, 2011, the Circuit Court for Howard County,
Maryland entered a consent order giving Krista and York "joint
legal custody and shared physical custody with a specific parent
schedule." ¶ 13.

The Complaint includes a series of allegations about
actions by the Employees on which the claims presented are
based.  These, include allegations that:

- On October 24, 2011, Offut screamed at York and accused him
  of lying when York reported abuse of the Children when
  under the care of Krista and the Stepfather.  ¶ 15.

- On some unspecified date, York reported to Protective
  Services that the Children reported being struck by Krista
  and the Stepfather on different occasions, that there were
  certain fights, that the Stepfather drinks in the house,
  and that there are drugs in the house. ¶ 16.

- Offut "continually lied" to York about the Children. ¶ 17.

- "On or about during (<u>sic</u>) April/May 2013 bruising was seen
  on the other child (<u>sic</u>) but ignored by defendant Pam Rice,

---

[5]     The "facts" herein are as alleged by York and are not
necessarily agreed upon by Defendants.
[6]     It appears that KY is referred to in the body of the
Complaint as having a name beginning with "C" and not "K." ¶ 16.

defendant Sangiovanni and Offut" and the Children suffered bruising from an "abusive male" in Krista's house. ¶ 18.

- The Children were "under state care and or supervision" and "the supervisor" and Offut ignored the harm.  Also Offut, Paulman, Rice, and Sangiovanni conspired to violate York's constitutional rights.  ¶ 19.

- At some unspecified time, Offut used inappropriate language and yelled about York's lying. ¶ 20.

- Sangiovanni "during 2012-2013," "ignored warning signs of plaintiff being abused the son (sic)."  ¶ 21.

- The Children were being abused by Krista and the Stepfather, but York was accused of lying.  Id.

- York made reports to Protective Services, "but the workers have failed to protect the children in violation of his and the children's constitutional rights." Id.

- The Children, while residing with Krista, were subject to drugs and alcohol in the home, but an unnamed Employee said they were "fine" and ignored York's unspecified "constitutional right" to procure custody.  ¶ 22.

In sum, the Complaint is based upon the allegation that Protective Services, by its Employees, failed to protect the Children from abuse committed by Krista and the Stepfather. However, as discussed herein, Protective Services did not have a constitutional obligation to provide the protection sought.

    B. First Claim

York claims that:

       At the time of the complained of
       events, Plaintiff had a clearly established
       constitutional right under the equal
       protection clause, due process-clause of the

5

14th amendment;[7] which were violated by CPS
leaving continually his children in harm's
way.

¶ 32.


1. Due Process Clause

The Due Process Clause of the Fourteenth Amendment bars
"States from depriv[ing] any person of life, liberty, or
property without due process of law."  U.S. CONST amend. XVI, §
1.  Generally, the Due Process Clause works only as a "negative
prohibition on state action."  Pinder v. Johnson, 54 F.3d 1169,
1174 (4th Cir. 1995) (en banc), cert. denied, 516 U.S. 994
(1995).  The Clause operates to "prevent [the] government 'from
abusing [its] power, or employing it as an instrument of
oppression.'"  DeShaney v. Winnebago County Dep't of Social
Services, 489 U.S. 189, 196 (1989)(quoting Davidson v. Cannon,
474 U.S. 344, 348 (1986)).


a. Substantive Due Process

The Substantive component of the Due Process Clause "bar[s]
certain government actions regardless of the fairness of the

---

[7]     "No state shall make or enforce any law which shall abridge
the privileges or immunities of citizens of the United States;
nor shall any state deprive any person of life, liberty, or
property, without due process of law; nor deny to any person
within its jurisdiction the equal protection of the laws." U.S.
CONST amend. XVI, § 1.

procedures used to implement them." Daniels v. Williams, 474
U.S. 327, 331 (1986).  However, its purpose is to "protect the
people from the State, not to ensure that the State protected
them from each other." DeShaney, 489 U.S. at 196.  Therefore,
the Due Process Clause acts only as "a limitation on the State's
power to act, not as a guarantee of certain minimal levels of
safety and security, and does not require government actors to
affirmatively protect life, liberty, or property against
intrusion by private third parties." Doe v S.C. Dep't of Soc.
Servs, 597 F.3d 163, 169 (2010) (internal quotation marks and
citations omitted) (emphasis added).

In DeShaney, a distraught mother, whose ex-husband beat and
permanently injured their son, sued the State's Department of
Social Services. DeShaney, 489 U.S. at 193.  The mother claimed
that the State "deprived [the child] of his liberty without due
process of law . . . by failing to intervene to protect him
against a risk of violence at his father's hands of which [the
State] knew or should have known." Id.  The Court held that the
"Due Process Clause does not require the State to provide its
citizens with particular protective services, it follows that
the State cannot be held liable under the Clause for injuries
that could have been averted had it chosen to provide them."
Id. at 196-97 (emphasis added).

DeShaney establishes that Protective Services cannot be held liable under the Due Process Clause for failing to intervene in the alleged abuses perpetrated while the Children were in Krista's custody even if doing so could have averted injury.  There are no factual allegations to support the conclusory statement that the Children were ever in State Protective Services custody.

In DeShaney, the Department of Social Services ("DSS") caseworker came to the victim-child's home and observed a number of suspicious injuries to the child.  Id. at 192.  Furthermore, the DSS in DeShaney recommended several measures to protect the victim-child and implemented these recommendations with the voluntary agreement by the victim-child's father.  Id. Nevertheless, the DeShaney Court held DSS had no duty to act under the Due Process Clause even if such action could have averted further injury to the victim-child.  Thus, even if York's allegations are true and Protective Services can be faulted for its alleged choice of inaction and "continually leaving [York's] children in harm's way," there was no violation of York's or the Children's constitutional due process rights.

In DeShaney, the Court recognized that in certain limited circumstances, "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."  Id. at 198.  Those circumstances arise

8

only when the State takes an individual into custody, thereby rendering the individual unable to care for himself or herself.[8] Id. at 198–99. As stated by the United States Court of Appeals for the Fourth Circuit: "This Court has consistently read DeShaney to require a custodial context before any affirmative duty can arise under the Due Process Clause." Pinder, 54 F.3d at 1175. The Complaint does not present factual allegations – as distinct from conclusory statements – presenting a plausible claim that the Children had been taken into Protective Services' custody.

In sum, York does not adequately allege a violation of his, or the Children's, substantive due process rights.

b. Procedural Due Process

To prevail on a claim that there was a denial of procedural due process, a plaintiff must first establish that he was deprived of a protected liberty or property interest. Cf. Board of Regents v. Roth, 408 U.S. 564, 570 (1972). "Protected 'liberty' interests may arise only from the Due Process clause

---

[8]    Such affirmative actions may invoke both Substantive and Procedural protections when the state subjects an involuntarily confined individual to deprivations of liberty which are not authorized by confinement. DeShaney, 489 U.S. at 200 n.8. See e.g., Youngberg v. Romeo, 457 U.S. 307, 317–18 (1982) (holding that when the State affirmatively shackles an involuntarily committed mental patient, the State must "provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint").

itself or from state laws." Edwards v. Johnston County Health
Dep't, 885 F.2d 1215, 1220 (4th Cir. 1989). However, "mere
[statutory] procedural guidelines" do not create any protected
interests; only "mandatory state regulations or statutory
directives which affect an individual's liberty" may do so. Id.
Adequate civil and criminal state remedies generally afford
procedural due process. See, e.g., Ingraham v. Wright, 430 U.S.
651, 678 (1977)(finding that state criminal and civil sanctions
"afford significant protection" against unjustified corporal
punishment"); Hall v. Tawney, 621 F.2d 607, 611 (4th Cir. 1980).

York has failed to allege facts to establish any liberty or
property interest sufficient to trigger the procedural
protections of the Due Process Clause.

York states in his Opposition to the instant motion:

> [B]y refusing to answer reasonable questions
> raised by [York] about the welfare of the
> [Children, Protective Services] precluded
> [York and Plaintiff-children] from seeking
> any relief based on the potential
> allegation. This relief may have included
> but has not been limited to a modification
> of custody, a restraining order, or, any
> other similar form of relief.

[ECF No. 13 at 2-3].

York's contention is erroneous, however, because any
failure to "answer reasonable questions" would not have
precluded York from seeking a modification of the custody order.

On this point, York's reliance upon <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972) is misplaced.  In <u>Morrissey</u>, the Supreme Court held that Fourteenth Amendment procedural due process protections required the State to afford a parolee some opportunity to be heard prior to revoking his parole.  <u>Id.</u> at 485.  Unlike the parolee in <u>Morrissey</u>, York had the procedural right to proceed in state court for modification of the custody order and indeed exercised that right.  Hence there was no violation of any procedural due process rights.

## 2.  Equal Protection

York's Complaint presents nothing to support any plausible contention that he was denied the equal protection of the laws, nor does his Opposition to the instant motion present any basis for such a claim.

## C.  Second Claim

The Second Claim is entitled "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and First Amendments and in violation of 42 U.S.C. § 1981."

### 1.   First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. CONST amend. I.  Although York asserts a violation of the First Amendment in Count II, the Complaint does not present factual allegations presenting any plausible First Amendment claim.

### 2.   Fourth Amendment

The Fourth Amendment provides that it is the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST amend. IV.

The Complaint does not present factual allegations presenting any plausible Fourth Amendment claim.

### 3. Fourteenth Amendment

The Second Claim presents nothing other than conclusory statements regarding any Fourteenth Amendment claim that has not been considered and resolved in regard to the First Claim. Thus, the Complaint does not present factual allegations presenting any plausible Fourteenth Amendment claim.

### 4. 42 U.S.C. § 1981

The statute provides:

All persons within the jurisdiction of the
United States shall have the same right in
every State and Territory to make and
enforce contracts, to sue, be parties, give
evidence, and to the full and equal benefit
of all laws and proceedings for the security
of persons and property as is enjoyed by
white citizens, and shall be subject to like
punishment, pains, penalties, taxes,
licenses, and exactions of every kind, and
to no other.

42 U.S.C. § 1981 (2012).

The Complaint does not present factual allegations
presenting any plausible § 1981 claim.


IV.   CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss [ECF No. 8] is GRANTED.

2. Judgment shall be entered by separate Order.


SO ORDERED, on Tuesday, November 15, 2016.


_____/s/_____

Marvin J. Garbis
United States District Judge


13